## IN THE UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF TENNESSEE

| | | |
|---|---|---|
| HABCO STRUCTURAL SPECIALISTS, INC., | ) ) | |
| | ) | |
| Plaintiff and Counter-Claim Defendant, | ) | |
| | ) | |
| v. | ) | Docket No. 1:20-cv-120 |
| | ) | |
| HOMESTEAD JOIST REINFORCEMENT LLC, COLBY YARGER, MICHELLE RAY, STEVEN MELANCON, and NATHANIEL HICKS, | ) ) ) ) | **JURY TRIAL DEMANDED** |
| | ) | |
| Defendants and Counter-Claim Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| MARJORIE HODGE, THE ESTATE OF PHILLIP HODGE, LISSA ESSEX, and ANTHONY ESSEX | ) ) ) | |
| | ) | |
| Third-Party Defendants. | ) | |

## COLBY YARGER'S ANSWER TO AMENDED COMPLAINT

Defendant Colby Yarger ("Mr. Yarger"), pursuant to Rule 12 of the Federal Rules of Civil Procedure, submits the following Answer to Plaintiff's Amended Complaint for Damages and Injunctive Relief (the "Amended Complaint"):

### PARTIES, JURISDICTION AND VENUE

1.     Mr. Yarger lacks knowledge or information sufficient to form a belief about the truth of the allegations.

2.     Admitted.

3.     Admitted.

4.     Mr. Yarger lacks knowledge or information sufficient to form a belief about the truth of the allegations.

5.     Mr. Yarger lacks knowledge or information sufficient to form a belief about the truth of the allegations.

6.     Mr. Yarger lacks knowledge or information sufficient to form a belief about the truth of the allegations.

7.     Mr. Yarger admits that the Amended Complaint purports to assert a claim under 18 U.S.C. § 1836, *et. seq.* The remainder of the allegations in this paragraph sets forth legal conclusions and questions of law to which no response is required.

8.     The paragraph sets forth legal conclusions and questions of law to which no response is required.

9.     Mr. Yarger admits that HJR and Mr. Yarger reside in this District, do business in this District, and that many of the allegations in the Amended Complaint occurred in this District. The allegation as to this Court's exercise of personal jurisdiction over the defendants sets forth a legal conclusion to which no response is required. Mr. Yarger lacks knowledge or information sufficient to form a belief about the truth of the allegations as to the other defendants.

10.     Mr. Yarger admits that HJR and Mr. Yarger do business in this District, and that many of the allegations in the Amended Complaint occurred in this District. The allegation as to the appropriateness of venue over the defendants sets forth a legal conclusion to which no response is required. Mr. Yarger lacks knowledge or information sufficient to form a belief about the truth of the allegations as to the other defendants.

## STATEMENT OF FACTS

11.     Mr. Yarger admits that Plaintiff has been known as Habco Engineers & Erectors, Inc. and Habco Structural Specialists, Inc, that Plaintiff has provided metal structure modification and joist design services, that Mr. Hodge was a professional engineer, and that Mr. Hodge was Plaintiff's majority shareholder and did serve as its President and CEO at some point in time. Mr. Yarger lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations.

12.     Mr. Yarger admits that at some point in 2019, Habco had 11 employees, including Mr. Yarger, Michele Ray, Steven Melancon, and Nathaniel Hicks, and that Habco has in the past contracted with independent contractors, some of whom had long-standing relationships with Habco. Mr. Yarger lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations.

13.     Mr. Yarger admits that Mr. Hodge decided to sell Habco and step away from day-to-day management. Mr. Yarger denies the remaining allegations.

14.     Mr. Yarger admits that Mr. Hodge decided to sell Habco to Mr. Yarger. Mr. Yarger denies the remaining allegations.

15.     Mr. Yarger admits that he was to assume the day-to-day operations and responsibilities for Habco. Mr. Yarger denies the remaining allegations in this paragraph.

16.     Denied.

17.     Mr. Yarger admits that he took over responsibility for operating Habco and running the day-to-day operations, and that Mr. Hodge stepped away from day-to-day operations, but still was involved in some way in the business. Mr. Yarger denies the remaining allegations.

18.     Admitted.

19.     Mr. Yarger admits that he operated the business from at least 2015-2019. Mr. Yarger lacks knowledge or information sufficient to form a belief about the truth of the allegation concerning Mr. Hodge remaining as the majority shareholder. Mr. Yarger denies the remaining allegations.

20.     Admitted.

21.     Mr. Yarger admits that on September 25, 2019, he registered HJR with the Tennessee Secretary of State, that he did not initially disclose HJR to Mrs. Marjorie Hodge, and that Ray, Melancon, and Hicks were aware of HJR's existence at some point prior to February 10, 2020. Mr. Yarger denies the remaining allegations.

22.     Denied.

23.     Mr. Yarger admits that in June 2019 Habco took out a loan for the purchase of a $67,000 Chevrolet Tahoe using Mr. Yarger's personal credit, that in November 2019 Habco paid off that loan, that in February 2020 Ray paid Habco $40,000 towards the purchase of the Chevrolet Tahoe, and that Habco maintained insurance on the Chevrolet Tahoe until February 12, 2020. Mr. Yarger denies the remaining allegations.

24.     Denied.

25.     Mr. Yarger admits he attended a Habco corporate meeting with Mrs. Hodge and Ms. Ray on or about December 6, 2019, that Mrs. Hodge was named as Habco CEO, that Mr. Yarger was named as Habco CFO, and that Ms. Ray was named Habco Corporate Secretary. Mr. Yarger denies the remaining allegations.

26.     Mr. Yarger admits that at some point prior to February 5, 2020, Habco had independent contractors on a job site in Norwood, Massachusetts. Mr. Yarger lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations.

27.     Mr. Yarger denies the allegations in the first sentence.  Mr. Yarger lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations.

28.     Admitted.

29.     Mr. Yarger admits that Mr. Melancon, Ms. Ray and Mr. Hicks resigned from Habco after Mr. Yarger resigned and began working for HJR.  Mr. Melancon otherwise denies the remaining allegations.

30.     Denied.

31.     Denied.

32.     Denied.

33.     Denied.

34.     Denied.

35.     Denied.

36.     Denied.

37.     Mr. Yarger admits that after he resigned from Habco, he requested certain information about Habco's former employees be deleted from its website because they no longer worked at Habco.  Mr. Yarger denies the remaining allegations.

38.     Denied.

39.     Denied.

40.     Denied.

41.     Denied.

42.     Mr. Yarger admits that Habco has used two pieces of software it referred to as JOIST and COMBINE, that JOIST may be used to design and analyze joists, which are trusses in structural engineering, that Habco was primarily in the business of reinforcing joists and not

manufacturing joists, and that Habco used JOIST to analyze existing joists to determine the extent of their overstress. Mr. Yarger lacks knowledge or information sufficient to form a belief about the truth of the allegations as to whether Mr. Hodge created JOIST and COMBINE in the 1980s, that Habco has continuously refined and updated JOIST and COMBINE over the years, and that Habco continues to own JOIST and COMBINE today. Mr. Yarger denies the remaining allegations.

43.    Mr. Yarger admits that Habco has used two separate programs referred to as JOIST and COMBINE. Mr. Yarger lacks knowledge or information sufficient to form a belief about the truth of the allegations.

44.    Mr. Yarger admits that Habco sold and licensed JOIST. Mr. Yarger denies the remaining allegations.

45.    Mr. Yarger lacks knowledge or information sufficient to form a belief about the truth of the allegations.

46.    Mr. Yarger admits that Habco sold JOIST. Mr. Yarger denies the remaining allegations.

47.    Denied.

48.    Mr. Yarger lacks knowledge or information sufficient to form a belief about the truth of the allegations.

49.    Mr. Yarger lacks knowledge or information sufficient to form a belief about the truth of the allegations.

50.    Mr. Yarger lacks knowledge or information sufficient to form a belief about the truth of the allegations.

51.     Mr. Yarger lacks knowledge or information sufficient to form a belief about the truth of the allegations.

52.     Mr. Yarger lacks knowledge or information sufficient to form a belief about the truth of the allegations.

53.     Mr. Yarger lacks knowledge or information sufficient to form a belief about the truth of the allegations.

54.     Mr. Yarger does not understand what the term "Standard Weld Details" refers to. Mr. Yarger denies the allegations in this paragraph.

55.     Mr. Yarger admits that JOIST can be used to analyze joists, and that COMBINE uses structural engineering calculations.  Mr. Yarger does not understand what the term "Standard Weld Details" refers to.  Mr. Yarger denies the remaining allegations in this paragraph.

56.     Denied.

57.     Mr. Yarger admits that he and Mr. Melancon had access to JOIST and COMBINE. Mr. Yarger does not understand what the term "Standard Weld Details" refers to.  Mr. Yarger denies the remaining allegations in this paragraph.

58.     Mr. Yarger admits that certain copies of JOIST included a "time bomb," a piece of code that made the program stop working after a certain amount of time, that certain licensed copies of JOIST included such a "time bomb," and that in certain instances, upon payment, Mr. Hodge would send the license another "time bomb" file to re-allow access to JOIST.  Mr. Yarger admits that Exhibit T purports to include an email from Kelly Sanders, an engineer for Valley Joist, a one-time JOIST licensee, that in this email, Ms. Sanders requests that Mr. Hodge send a new time bomb file, and that it appears from the email chain, that Mr. Hodge replied with a time bomb file with a six month expiration.  The remaining allegations are denied.

59.     Denied.

60.     Mr. Yarger admits that at least certain copies of COMBINE did not have a time bomb file.  The remaining allegations are denied.

61.     Denied.

62.     Mr. Yarger admits the first two sentences.  Mr. Yarger lacks knowledge or information sufficient to form a belief about the truth of the allegations as to what Mr. Rainey understood and what Mr. Rainey retained after resigning from Habco.  Mr. Yarger denies the remaining allegations.

63.     Mr. Yarger admits he sent the text message attached as Exhibit V to the Amended Complaint and that JOIST and COMBINE were installed on the computer Mr. Neal was using.  Mr. Yarger lacks knowledge or information sufficient to form a belief about the truth of the allegations as to what Mr. Neal retained after resigning from Habco.  Mr. Yarger denies the remaining allegations.

64.     Mr. Yarger admits that he instructed Ms. Lorentz not to use JOIST.  Mr. Yarger does not understand what the term "Standard Weld Details" refers to.  Mr. Yarger lacks knowledge or information sufficient to form a belief about the truth of the allegations as to what Ms. Lorentz understood, and as to whether Ms. Lorentz used or shared JOIST or COMBINE after resigning from Habco.  Mr. Yarger denies the remaining allegations.

65.     Mr. Yarger admits that HJR has retained copies of JOIST and COMBINE on a computer that Mr. Melancon had used and has used both of these programs a handful of times prior to entry of the Agreed Temporary Restraining Order.  Mr. Yarger specifically denies that any of the Defendants have the source code for JOIST or COMBINE and that he has made any

representation to the contrary.  Mr. Yarger does not understand what the term "Standard Weld Details" refers to.  Mr. Yarger otherwise denies the remaining allegations.

66.     Denied.

67.     Mr. Yarger admits that Mr. Melancon has a degree in mechanical engineering and not structural engineering, and that Mr. Hodge provided some limited training to Mr. Melancon as to how to use JOIST and COMBINE.  Mr. Yarger does not understand what the term "Standard Weld Details" refers to.  The remaining allegations are denied.

68.     Mr. Yarger admits that HJR, through its employee Mr. Melancon, used JOIST and COMBINE at some point prior to entry of the Agreed TRO on May 27, 2020.  Mr. Yarger does not understand what the term "Standard Weld Details" refers to.  The remaining allegations are denied.

## CAUSES OF ACTION

## COUNT 1

69.     Mr. Yarger incorporates by reference his answers to the preceding paragraphs.

70.     This paragraph sets forth a legal conclusion to which no response is required.

71.     Denied.

72.     Denied.

73.     Denied.

74.     Denied.

75.     Denied.

76.     Denied.

77.     Denied.

78.     Denied.

79.     Mr. Yarger admits that HJR was formed in September 2019.  Mr. Yarger denies the remaining allegations.

80.     Denied.

81.     Denied.

82.     Denied.

83.     Denied.

84.     Denied.

85.     Denied.

## COUNT 2

86.     Mr. Yarger incorporates by reference his answers to the preceding paragraphs.

87.     Mr. Yarger admits that at some point prior to December 2019, he, Ms. Ray and Mr. Melancon were all employees of Habco, that he attended a meeting with Mrs. Hodge and Ms. Ray on or about December 6, 2019, that at this meeting, Mrs. Hodge was named as Habco CEO, that Mr. Yarger was named as Habco CFO, and that Ms. Ray was named Habco Corporate Secretary. Mr. Yarger denies the remaining allegations.

88.     Mr. Yarger admits that he, Ms. Ray, Mr. Melancon and Mr. Hicks were at some point employees of Habco.  Mr. Yarger denies the remaining allegations as setting forth a legal conclusion to which no response is required.

89.     Denied.

90.     Denied.

91.     Denied.

92.     Denied.

93.     Denied.

94.    Denied.

95.    Denied.

## COUNT 3

96.    Mr. Yarger incorporates by reference his answer to the preceding paragraphs.

97.    Denied.

98.    Denied.

99.    Denied.

100.    Denied.

101.    Denied.

## COUNT 4

102.    Mr. Yarger incorporates by reference his answers to the preceding paragraphs.

103.    Denied.

104.    Denied.

105.    Denied.

106.    Admitted that Habco owned trucks, vehicles and equipment used in the operation of its business.  Mr. Yarger denies the remaining allegations

107.    Denied.

108.    Mr. Yarger admits that he has in his possession electronic copies of certain documents that he used while employed by Habco.  Mr. Yarger denies the remaining allegations.

109.    Denied.

110.    Denied.

111.    Denied.

112.    Denied.

113.     Denied.

114.     Denied.

115.     Denied.

116.     Denied.

## COUNT 5

117.     Mr. Yarger incorporates by reference his answers to the preceding paragraphs.

118.     Denied.

119.     Denied.

120.     Denied.

121.     Denied.

122.     Denied.

## COUNT 6

123.     Mr. Yarger incorporates by reference his answers to the preceding paragraphs.

124.     Denied.

125.     Mr. Yarger admits that he had knowledge of certain of Habco's business relationships while he was affiliated with Habco.  Mr. Yarger denies the remaining allegations.

126.     Mr. Yarger admits that Ms. Ray and Mr. Melancon had knowledge of certain of Habco's business relationships while they were affiliated with Habco.  Mr. Yarger denies the remaining allegations.

127.     Denied.

128.     Denied.

129.     Denied.

130.     Denied.

131. Denied.

132. Denied.

133. Denied.

**COUNT 7**

134. Mr. Yarger incorporates by reference his answers to the preceding paragraphs.

135. Denied.

136. Denied.

137. Mr. Yarger admits that he had knowledge of certain of Habco's business relationships while he was affiliated with Habco. Mr. Yarger denies the remaining allegations.

138. Mr. Yarger admits that Ms. Ray and Mr. Melancon had knowledge of certain of Habco's business relationships while they were affiliated with Habco. Mr. Yarger denies the remaining allegations.

139. Denied.

140. Denied.

141. Denied.

142. Denied.

143. Denied.

144. Denied.

145. Denied.

**COUNT 8**

146. Mr. Yarger incorporates by reference his answers to the preceding paragraphs.

147. Denied.

148. Denied.

149.    Denied.

150.    Denied.

151.    Denied.

152.    Mr. Yarger admits that HJR used JOIST and COMBINE a handful of times prior
to entry of the Agreed Temporary Restraining Order.  Mr. Yarger denies the remaining allegations.

153.    Denied.

154.    Denied.

155.    Denied.

156.    Denied.

**COUNT 9**

157.    Mr. Yarger incorporates by reference his answers to the preceding paragraphs.

158.    Denied.

159.    Denied.

160.    Denied.

161.    Denied.

162.    Denied.

**COUNT 10**

163.    Mr. Yarger incorporates by reference his answers to the preceding paragraphs.

164.    Denied.

165.    Denied.

166.    Denied.

167.    Denied.

168.    Denied.

## COUNT 11

169.    Mr. Yarger incorporates by reference his answers to the preceding paragraphs.

170.    Denied.

171.    Mr. Yarger admits that he registered HJR with the Tennessee Secretary of State. Mr. Yarger denies the remaining allegations.

172.    Denied.

173.    Denied.

174.    Denied.

175.    Denied.

176.    Denied.

177.    Denied.

178.    Denied.

## COUNT 12

179.    Mr. Yarger incorporates by reference his answers to the preceding paragraphs.

180.    Mr. Yarger admits that beginning in or about 2015, Yarger moved the physical location of Habco from Mr. Hodge's property to office space Yarger owned.  Mr. Yarger further admits that he leased Habco certain space.  Mr. Yarger otherwise denies the remaining allegations.

181.    Admitted.

182.    Admitted.

183.    Mr. Yarger admits that he instructed Habco to remove its personal property from the lease site by March 10, 2020.  Mr. Yarger denies the remaining allegations.

184.    Denied.

185.    Denied.

186.    Denied.

To the extent not otherwise specially admitted or denied, Mr. Yarger denies all other allegations contained in the Amended Complaint.

Mr. Yarger denies all allegations contained in the Prayer for Relief and further denies that Habco is entitled to any relief whatsoever.

For his affirmative defenses, Mr. Yarger states as follows:

1.    Habco's claims and requested relief are barred by the doctrine of unclean hands. By way of example, upon information and belief, Habco has offered to pay, actually paid and/or given remunerative employment to fact witnesses and prospective fact witnesses in exchange for their testimony against the Defendants in violation of 18 U.S. Code § 201. By further example, Habco disconnected the cell phone number used by Mr. Hodge that was advertised as a number for contacting Habco. By way of further example, Habco, Mr. Hodge and Mrs. Hodge used Habco funds to finance personal purchases for Mr. and Mrs. Hodge, including a recreational vehicle. By way of even further example, Mrs. Hodge, as the personal representative of the Estate of Phillip Hodge, and as an agent of Habco, wrongfully denied the existence of the Agreement whereby Mr. Yarger was to purchase Habco. By way of further example, in or around September 2019, Mrs. Hodge, acting in concert with Lisa Essex, attempted to have Habco's bank accounts frozen without proper authority or cause. By way of further example, on or around March 28, 2020, Mrs. Hodge, Anthony Essex and Lisa Essex, acting on their own behalf and as agents of Habco, converted Mr. Yarger's personal property, including a heating and air system, unit pads for the heating and air systems, plastic storage totes, rollup overhead drum door, two metal till hoppers, and a light. By way of further example, while Mr. Yarger was still employed by Habco, Mrs. Hodge prevented Habco from accessing certain Habco equipment stored on her property with the permission of Mr.

Hodge. By even further example, Mrs. Hodge, acting on her own behalf and as an agent of Habco, attempted and did actually interfere with the delivery of mail addressed to companies owned by Mr. Yarger, including Homestead Storage and Homestead Transportation, by improperly removing mail from a mailbox on property owned by Mr. Yarger not addressed to Mrs. Hodge or Habco, attempting to and actually causing the United States Postal Service to forward mail addressed to these entities to her personal address, opening such mail, and improperly retaining possession such mail for a period of time.

2.      Habco's claims and requested relief, to the extent founded on a contractual relationship, are barred by Mr. Yarger's full performance. To the extent, Mr. Yarger had an agreement with Habco and/or Mr. Hodge, Mr. Yarger fully performed under that agreement. Further, to the extent Mr. Yarger had a lease with Habco for its office space on his property, he fully performed under that agreement.

3.      Habco's claims and requested relief, to the extent founded on a contractual relationship other than that understood by Mr. Yarger, are barred by the statute of frauds. For example, upon information and belief, the alleged oral contract Habco relies on could not be performed in one year or less.

4.      Habco's claims and requested relief, to the extent founded on a contractual relationship, are barred by subsequent modification of that agreement. To the extent, Mr. Yarger had an agreement with Habco and/or Mr. Hodge, the agreement was modified such that Mr. Yarger fully performed under the modified agreement. By way of example as to the lease agreement, Habco's representative voluntarily agreed to vacate Habco's offices and turn over the lease.

5.      Alternatively, Habco's claims and requested relief are barred by Habco's, Mr. Hodge's and or Mrs. Hodge's breach of contract. To the extent a contract exists, Habco and Mr.

Hodge, through their agent Marjorie Hodge, breached the contract first and precluded Mr. Yarger from completing performance.

6.      The purported agents of Habco lack standing to bring this lawsuit.  To the extent there was an agreement between Mr. Hodge and Mr. Yarger whereby Mr. Hodge sold Habco to Mr. Yarger, Mr. Yarger became the owner of Habco.  Mr. Yarger has not authorized a lawsuit, on behalf of Habco, against himself.  As such, Habco's claims and requested relief are barred by the lack of standing.

7.      Habco's claims and requested relief are barred by Habco's prior approval and subsequent ratification of Defendants' actions.  Mr. Yarger was given control of Habco and permission to use its assets as he saw fit.  As such, any action Mr. Yarger took was approved by Habco.  Furthermore, Defendants' actions were subsequently ratified by Mr. Hodge and/or Mrs. Hodge.  By way of example, at the December 6, 2019, meeting, Mrs. Hodge authorized Mr. Yarger to award employee bonuses.  By way of further example, Habco's representative voluntarily agreed to vacate Habco's offices and turn over the lease.

8.      Habco's claims and requested relief are barred by waiver.  To the extent Defendants engaged in wrongful conduct, Habco waived its right to seek damages resulting therefrom by its approval and ratification of Mr. Yarger's conduct. Mr. Yarger was given control of Habco and permission to use its assets as he saw fit.  As such, any action Mr. Yarger and the other Defendants took was approved by Habco and any claim is waived.  Furthermore, Defendants' actions were subsequently ratified by Mr. Hodge and/or Mrs. Hodge, and/or another Habco representative thereby waiving any claim.  By way of example, at the December 6, 2019, meeting, Mrs. Hodge authorized Mr. Yarger to award employee bonuses.  By way of further example, Habco's representative voluntarily agreed to vacate Habco's offices and turn over the lease.

9.      Habco has failed to state a claim under the Defend Trade Secrets Act for which relief may be granted.  In violation of Rule 8 of the Federal Rules of Civil Procedure, Habco has failed to appropriately identify the trade secrets; Habco failed to take reasonable measures to protect the alleged trade secrets; and Habco admits that it sold some or all of the trade secrets on an unrestricted basis  Moreover, Habco gave JOIST and COMBINE to Mr. Yarger and Mr. Melancon outright.

10.     Habco has failed to state a claim under the Tennessee Uniform Trade Secrets Act for which relief may be granted.  In violation of Rule 8 of the Federal Rules of Civil Procedure, Habco has failed to appropriately identify the trade secrets; Habco failed to take reasonable measures to protect the alleged trade secrets; and Habco admits that it sold some or all of the trade secrets on an unrestricted basis  Moreover, Habco gave JOIST and COMBINE to Mr. Yarger and Mr. Melancon outright.

11.     Habco has failed to state a claim under the Fraudulent Transfers Act Claim for which relief may be granted.  The Fraudulent Transfers Act Claim makes it illegal for a debtor to transfer assets in an attempt to evade creditors.  Accepting as true Habco's allegations, Mr. Yarger improperly transferred Habco's assets to himself, retained those assets, and made him, in effect, more judgment worthy.  The Fraudulent Transfers Act Claim does not apply to these alleged facts.

12.     Habco has failed to state a claim for fraudulent misrepresentation for which relief may be granted.  In violation of Rules 8 and 9 of the Federal Rules of Civil Procedure, Habco has failed to adequately plead what the individual Defendants fraudulently misrepresented; the who, what, where, and when of the alleged misrepresentation is not pled; and the claim, as pled, leaves the individual Defendants to guess at his alleged wrongful conduct.

13.     Habco's claim of misappropriation of trade secrets is made in bad faith, and Defendants are entitled to attorneys' fees pursuant to 18 United States Code Section 1836(b)(3)(D) and Tennessee Code Annotated Section 47-25-1705. By way of example, Habco's own witnesses were either unable to define what the "Standard Weld Details" trade secret is, or when they could identify it, admitted that it was a document that Habco filed on the public docket in this action. By way of further example, Habco sold its JOIST software, including the underlying source code, to multiple customers with no restriction as how those companies may use, maintain or sell the software. By way of further example, Mr. Hodge gave copies of JOIST and COMBINE to Mr. Yarger and Mr. Melancon.

14.     Habco's claims and requested relief are barred by its failure to mitigate its damages. Habco is not actively participating in the market in an attempt to drive up its alleged damages.

15.     Habco's claims and requested relief are barred because Habco has no legally recognizable injury, and its alleged damages are speculative and not recoverable as a matter of law.

16.     Habco's claims and requested relief should be set-off against or reduced by the amount of damages it has caused, including for those claims set forth below.

17.     Habco's claims and requested relief are barred by the statute of limitations to the extent any of the alleged conduct occurred prior to the statutory period.

18.     Mr. Yarger respectfully requests that the Complaint be dismissed with prejudice, that Habco's claims and request for relief be denied, and that all costs be taxed to Habco.

## COUNTERCLAIMS

Mr. Yarger, for his Counterclaims against Habco, and third-party defendants Marjorie Hodge, the Estate of Phillip T. Hodge, Lissa Essex, and Anthony Essex, states as follows:

## JURISDICTION AND VENUE

1.     This Court has original jurisdiction over Habco's claim arising under the Defend Trade Secrets Act under 28 U.S.C. § 1331.

2.     The Court may exercise supplemental jurisdiction over the remaining claims and Mr. Yarger's Counterclaims under 28 U.S.C. § 1367.

3.     Venue is proper in this Court under 28 U.S.C. § 1391(b).

## FACTS

### The Parties

4.     Mr. Yarger is a resident of Rhea County, Tennessee.

5.     Marjorie Hodge is a resident of Rhea County, Tennessee.

6.     Upon information and belief, Marjorie Hodge is the personal representative of the Estate of Phillip Hodge, her late husband, an estate being probated in Rhea County, Tennessee.

7.     At the time of his death, Mr. Hodge was a resident of Rhea County, Tennessee.

8.     Habco is organized, incorporated, and existing under the laws of the State of Tennessee with its principal place of business at 630 Pegasus Drive, Spring City, Tennessee 37381.

9.     At all times relevant to this Counterclaim, Mrs. Hodge was acting as an agent of Habco.

10.     Lissa Essex is a resident of Rhea County, Tennessee, who upon information belief, resides at 439 Ballard Str, Dayton, TN 37321.

11.     Mrs. Essex is Mrs. Hodge's daughter and Mr. Hodge's stepdaughter.

12.     Anthony Essex is a resident of Rhea County, Tennessee, who upon information belief, resides at 439 Ballard Str, Dayton, TN 37321.

13.     Mr. Essex is Lisa Essex's husband and Mrs. Hodge's son-in-law.

**Mr. Yarger Took Over the Day-to-Day Operations of Habco**

14.     In or around January 2015, Mr. Hodge, the founder and owner of Habco, agreed to sell Habco to Mr. Yarger through a management leveraged buy-out.

15.     This agreement (the "Agreement") was never reduced to writing, but it consisted of several provisions, including that:

   a.  Mr. Yarger was given control of Habco's operations;

   b.  Mr. Hodge would only be involved with Habco on an intermittent, consulting basis—from both an engineering and a business advising perspective;

   c.  Mr. Hodge would issue Mr. Yarger an about $10 million promissory note and transfer all of Habco's stock to Mr. Yarger (though slightly less than that, as Mr. Hodge had transferred a negligible amount of stock to other individuals as bonuses);

   d.  Mr. Yarger would pay Mr. Hodge for the principal and interest on the promissory note out of Habco's revenues and profits;

   e.  Until the parties reduced a final agreement to writing and the issuance of the promissory note and the transfer of the Habco stock to Mr. Yarger, Mr. Yarger and Mr. Hodge would discuss the revenue and profits of Habco, analyze their tax burdens, and determine an amount of the profits to be attributed to Mr. Yarger's payment of the to be issued promissory note on an going basis, with any profits left-over for Mr. Yarger's sole benefit; and

   f.  Until the parties reduced a final agreement to writing and the issuance of the promissory note and the transfer of the Habco stock to Mr. Yarger, Mr. Yarger would nonetheless be treated as the owner of Habco and could run Habco as he saw

fit, so long as Mr. Yarger and Mr. Hodge agreed on the amount of money to be
attributed to the purchase price and with the agreement that if Mr. Yarger left Habco
for any reasons before issuance of a promissory note and the transfer of the Habco
stock, that Mr. Yarger would be entitled to a full refund of all amounts he had
contributed toward the  payment of the to be issued promissory note.

16.     The Agreement was solely between Mr. Yarger and Mr. Hodge, who, upon
information and belief, was the nearly sole stockholder of Habco.

17.     Mr. Yarger and Mr. Hodge performed under the Agreement without ever reducing
a final agreement to writing, issuing a promissory note, or transferring any Habco stock to Mr.
Yarger.

18.     Were it not for the Agreement, Mr. Yarger would not have continued to work for
Habco, increase its revenue and profits, and otherwise further its goodwill.

**Mr. Yarger Conferred a Benefit on Mr. and Mrs. Hodge and Habco**

19.     Per the terms of the Agreement, from 2015 until shortly after Mr. Hodge's death in
2019, Mr. Yarger ran Habco.

20.     Per the terms of the Agreement, Mr. Yarger was in charge of hiring and firing, other
employment decisions, bidding on jobs, customer relations, human resources, selecting legal
counsel, selecting outside accountants, employee remuneration, and any other decision that
affected the day-to-day operations of Habco.

21.     As a result of Mr. Yarger's business savvy, Habco's annual revenue and profits
increased substantially under Mr. Yarger's leadership, with the annual revenue climbing to over
$7 million.

22.     Mr. Yarger also added other assets to Habco, including additional trucks and other equipment.

23.     Consistent with this increase in revenue, profit and assets, Mr. Yarger also expanded Habco's customer base, adding many new customers, which was in addition to the strengthening of previous customers' relationships with Habco.

24.     Consistent with the Agreement, Mr. Yarger and Mr. Hodge agreed on an ongoing basis as to the amount of Habco profits to be attributed to payment of the to be issued promissory note.

25.     Mr. Yarger paid Mr. Hodge about $881,800 in 2015; $235,000 in 2016; $562,392.72 in 2017; $187,146.17 in 2018; and about $700,000 in 2019 out of Habco's revenues and profits.

26.     These payments to Mr. Hodge consisted of both direct payments to Mr. and Mrs. Hodge and other expenses of Mr. Hodge that were paid by Habco.

27.     For example, in 2017, Mr. and Mrs. Hodge bought a nearly half-million dollar motorhome, which was paid for by Habco.

28.     This motorhome expense was, at the agreement of Mr. Yarger and Mr. Hodge, attributed to payment of the to be issued promissory note.

29.     In sum, Mr. Yarger paid Mr. Hodge approximately $2.5 million out of Habco's revenues and profits towards payment of the to be issued promissory note.

30.     Mr. Yarger was entitled to any profits of Habco over and above these amounts, as reflected in the Agreement and the numerous statements by Mr. Hodge to this same end.

**Mrs. Hodge Renounced the Agreement and Unilaterally Prohibited Mr. Yarger from Running Habco in Breach of the Agreement**

31.     On August 23, 2019, Mr. Hodge died unexpectedly.

32.     Mr. Yarger learned of his death through Mrs. Hodge on or around the same day.

33.     Mr. Yarger attempted to continue to run Habco exactly as he had run Habco before Mr. Hodge's death.

34.     However, Mrs. Hodge refused to effectively communicate with Mr. Yarger, attempted to sabotage Mr. Yarger's operation of Habco, and intentionally and successfully precluded Mr. Yarger from running Habco.

35.     Upon information and belief, in or around September 2019, Mrs. Hodge and Mrs. Essex, acting on their own behalf and without authorization of Habco or Mr. Yarger, attempted to have certain Habco bank accounts frozen.

36.     Mrs. Hodge without Mr. Yarger's knowledge or permission fired Habco's corporate lawyer, Eric Butler, and accountant, Edgar Gee.

37.     Mr. Yarger only learned of this information after receiving phone calls from Mr. Butler and Mr. Gee stating that they had been fired.

38.     At the December 6, 2019, Habco board meeting, one of the few instances during this time period in which Mrs. Hodge communicated with Mr. Yarger, Mrs. Hodge unilaterally appropriated the title and role of Chief Executive Officer of Habco, and all of its attendant rights and responsibilities.

39.     At this meeting, Mrs. Hodge also informed Mr. Yarger that Mr. Yarger never had an agreement with Mr. Hodge for the purchase of Habco, that she was the sole owner of Habco and enjoyed sole control over its operations, that Mr. Yarger did not have any say in Habco's operations, and otherwise disavowed the existence Agreement.

40.     At the meeting, she finally informed Mr. Yarger of the actions she had taken to fire and replace Habco's attorney and accountant.

41.     At the meeting, Mrs. Hodge gave orders to Mr. Yarger as to other aspects of the day-to-day operation of Habco, including employee remuneration and bonuses, and the hiring of additional engineers.

42.     At this meeting, Mrs. Hodge also stated that as sole owner of Habco, it was her intention to sell Habco on the public market.

43.     Mrs. Hodge's actions left no choice for Mr. Yarger but to resign from Habco.

44.     Until Mr. Yarger's forced resignation following Mrs. Hodge's actions, Mr. Yarger continued to try and run Habco just as he had run it before Mr. Hodge's death.

45.     Upon information and belief, Mrs. Hodge became the personal representative and sole beneficiary of the Estate of Philip Hodge.

46.     Upon information and belief, Mrs. Hodge's unjust actions following Mr. Hodge's death occurred while she was the personal representative and sole beneficiary of the Estate of Philip Hodge.

47.     Furthermore, following Mr. Hodge's death, Mrs. Hodge purported to act on behalf of Habco as its majority shareholder and majority vote holder on Habco's board.

48.     As such, Mrs. Hodge's unjust actions following Mr. Hodge's death occurred while she was the agent of Habco.

**Mrs. Hodge, Mrs. Essex and Mr. Essex and Habco Converted Mr. Yarger's Property**

49.     Mr. Yarger owned certain personal property he stored on his property located at 24595 Rhea County Highway, Spring City, Tennessee 37381.

50.     On or about March 28, 2020, Mrs. Hodge, Mrs. Essex and Mr. Essex, acting on their own behalf and as agents of Habco, entered Mr. Yarger's property located at 24595 Rhea County Highway, Spring City, Tennessee 37381, and without authorization took and retained Mr. Yarger's personal property stored at this address, including a heating and air system, unit pads for

-26-

the heating and air systems, plastic storage totes, rollup overhead drum door, two metal till hoppers, and a light.

## COUNT I

## UNJUST ENRICHMENT

### (Mrs. Hodge, the Estate of Phillip Hodge, and Habco)

51.     The foregoing paragraphs are fully incorporated by reference herein.

52.     Mr. Yarger conferred a benefit upon Mr. Hodge and, by her inheritance of Mr. Hodge's assets and as the personal representative of his estate, Mrs. Hodge by paying them nearly $2.5 million toward the purchase price of Habco, increasing the revenue and profits of Habco, and otherwise furthering the goodwill of Habco.

53.     Mr. Hodge and, by her inheritance of Mr. Hodge's assets and as the personal representative of his estate, Mrs. Hodge appreciated those benefits, as they now control all of the monies paid by Mr. Yarger, the increased revenue and profits, and the goodwill of Habco.

54.     Furthermore, Mr. Yarger conferred a benefit upon Habco by increasing its revenue and profits and otherwise furthering its goodwill.

55.     Habco appreciated those benefits, as it now retains the increased revenue and profits and goodwill.

56.     It would be inequitable for Mr. Hodge, Mrs. Hodge, and Habco to retain these benefits given Mrs. Hodge's actions, which are attributable to Mr. Hodge's estate and Habco, in breaching the Agreement between Mr. Hodge and Mr. Yarger and otherwise constructively discharging Mr. Yarger.

57.     As a direct and proximate result of the inequitable retention of these benefits, Mr. Hodge, Mrs. Hodge, and Habco have been unjustly enriched to the detriment of Mr. Yarger, for which Mr. Yarger is entitled to an award of damages.

## COUNT II

## PROMISSORY ESTOPPEL

### (Mrs. Hodge and the Estate of Phillip Hodge)

58.     The foregoing paragraphs are fully incorporated by reference herein.

59.     Mr. Hodge, on his own behalf and as an agent of Habco, promised Mr. Yarger that Mr. Yarger would be given day-to-day operations of Habco and keep all profits of Habco above what they agreed to count toward the purchase price of Habco at the periodic reviews.

60.     This promise was unambiguous and definite; in fact, Mr. Yarger and Mr. Hodge acted in accordance with this promise for four years, without issue.

61.     Mr. Yarger reasonably relied on this promise to his detriment, as Mr. Yarger would not have continued to work for Habco, increase its revenue and profits, and otherwise further its goodwill had this promise not been made.

62.     Mr. Hodge, through Mrs. Hodge's actions, broke this promise by breaching this promise and otherwise constructively discharging Mr. Yarger.

63.     As a direct and proximate result of these actions, Mr. Yarger has been harmed.

## COUNT III

## BREACH OF CONTRACT

### (Mrs. Hodge and the Estate of Phil Hodge)

64.     The foregoing paragraphs are fully incorporated by reference herein.

65.     Strictly in the alternative to Mr. Yarger's unjust enrichment claim, there was a valid and enforceable agreement between Mr. Yarger and Mr. Hodge—the Agreement.

66.     Upon information and belief, Mrs. Hodge became responsible for executing the Agreement as Mr. Hodge's personal representative and was the sole inheritor of this contract.

67.     Mr. Hodge, through Mrs. Hodge's actions, breached the Agreement by:

    a.  Renouncing the existence of the Agreement;

    b.  Prohibiting Mr. Yarger from running the day-to-day operations of Habco;

    c.  Refusing to communicate with Mr. Yarger;

    d.  Attempting to freeze Habco's bank accounts;

    e.  Firing Habco's corporate accountant and lawyer;

    f.  Unilaterally appropriating the title, and concomitant power, of Chief Executive Officer of Habco;

    g.  Refusing to allow Mr. Yarger to continue paying for his acquisition of Habco; and

    h.  Retaining, Mr. Yarger's monies that were paid to Mr. Hodge for purchase of Habco stock.

68.     As a direct and proximately result of these actions, Mr. Yarger has suffered damages.

## COUNT IV

### IN THE ALTERNATIVE – BREACH OF DUTY OF GOOD FAITH AND FAIR DEALING

### (Mrs. Hodge and the Estate of Phil Hodge)

69.     The foregoing paragraphs are fully incorporated by reference herein.

70.     Strictly in the alternative to Mr. Yarger's unjust enrichment claim, there was a valid and enforceable agreement between Mr. Yarger and Mr. Hodge.

71.    Upon information and belief, Mrs. Hodge became responsible for executing the Agreement as Mr. Hodge's personal representative and was the sole inheritor of this contract.

72.    Mr. Hodge had a duty to exercise good faith and fair dealing in fulfilling his contractual obligations under the agreement and in dealing with Mr. Yarger.

73.    This duty extended to Mrs. Hodge as the personal representative of the estate and as sole beneficiary of Mr. Hodge.

74.    Mr. Hodge, through Mrs. Hodge's actions, breached the duty of good faith and fair dealing by, among things:

   a.   Renouncing the existence of the Agreement;

   b.   Prohibiting Mr. Yarger from running the day-to-day operations of Habco;

   c.   Refusing to communicate with Mr. Yarger;

   d.   Attempting to freeze Habco's bank accounts;

   e.   Firing Habco's corporate accountant and lawyer;

   f.   Unilaterally appropriating the title, and concomitant power, of Chief Executive Officer of Habco;

   g.   Refusing to allow Mr. Yarger to continue paying for his acquisition of Habco; and

   h.   Retaining Mr. Yarger's monies that were paid to Mr. Hodge for purchase of Habco stock.

75.    As a direct and proximately result of these actions, Mr. Yarger has suffered damages.

## COUNT V

## IN THE ALTERNATIVE – INTERFERENCE WITH CONTRACT

### (Mrs. Hodge and Habco)

76.     The foregoing paragraphs are fully incorporated by reference herein.

77.     Strictly in the alternative to Mr. Yarger's unjust enrichment claim, there was a valid and enforceable agreement between Mr. Yarger and Mr. Hodge.

78.     To the extent that Mrs. Hodge was not a party to the Agreement, she was aware of the Agreement.

79.     Habco, vicariously through its agent, Mrs. Hodge, was aware of the Agreement.

80.     Mrs. Hodge, and vicariously Habco, intended to induce a breach of the Agreement by:

  a.  Renouncing the existence of the Agreement;

  b.  Prohibiting Mr. Yarger from running the day-to-day operations of Habco;

  c.  Refusing to communicate with Mr. Yarger;

  d.  Attempting to freeze Habco's bank accounts;

  e.  Firing Habco's corporate accountant and lawyer;

  f.  Unilaterally appropriating the title, and concomitant power, of Chief Executive Officer of Habco;

  g.  Refusing to allow Mr. Yarger to continue paying for his acquisition of Habco; and

  h.  Retaining, Mr. Yarger's monies that were paid to Mr. Hodge for purchase of Habco stock.

81.     Mrs. Hodge, and vicariously Habco, acted with malice.

82.     As a proximate result of Mrs. Hodge's, and vicariously Habco's, actions, Mr. Hodge breached the Agreement with Mr. Yarger.

83.     As a direct and proximate result of these actions, Mr. Yarger has suffered damages.

84.     Pursuant to Tennessee Code Annotated Section 47-50-109, Mrs. Hodge's inducement to and procurement of the breach of the Agreement entitles Mr. Yarger to treble the amount of his damages.

**COUNT VIII**

**CONVERSION**

**(Habco, Mrs. Hodge, Mrs. Essex, and Mr. Essex)**

85.     The foregoing paragraphs are fully incorporated by reference herein.

86.     Mr. Yarger is the owner of certain personal property, including a heating and air system, unit pads for the heating and air systems, plastic storage totes, rollup overhead drum door, two metal till hoppers, and a light.

87.     Mrs. Hodge, Mrs. Essex and Mr. Essex, acting on their own behalf and as agents of Habco, intentionally and knowingly misappropriated this personal property by improper means by taking it and retaining it without authorization.

88.     Mrs. Hodge, Mrs. Essex, Mr. Essex and Habco have used said property for their own benefit.

89.     Mrs. Hodge, Mrs. Essex, Mr. Essex and Habco have intentionally exercised dominion over this property by refusing to return the property to Mr. Yarger.

90.     The foregoing actions have defied Mr. Yarger's, the true owner, rights.

91.     As a direct and proximate result of the conversion, Mr. Yarger has suffered damages.

## COUNT IX

## VICARIOUS LIABILITY

### (Habco and the Estate of Phillip Hodge)

92.     The foregoing paragraphs are fully incorporated by reference herein.

93.     At all times relevant hereto, Mrs. Hodge was acting as an agent of Habco.

94.     Mrs. Hodge claimed to own stock of Habco, be the majority voting member of Habco, and act as the Chief Executive Officer of Habco.

95.     When engaging in her wrongful acts, Mrs. Hodge was acting in the course and scope of her agency relationship with Habco.

96.     Habco is vicariously liable for all of Mrs. Hodge's actions.

97.     At all times relevant hereto, Mrs. Hodge was acting as the personal representative and sole beneficiary of the Estate of Philip Hodge.

98.     When engaging in her wrongful acts, Mrs. Hodge was acting in the course and scope of her personal representative capacity, as well as her individual capacity.

99.     The Estate of Philip Hodge is vicariously liable for all of Mrs. Hodge's actions.

## COUNT X

## PUNITIVE DAMAGES

### (All Counterclaim Defendants)

100.     The foregoing paragraphs are fully incorporated by reference herein.

101.     Mrs. Hodge's actions described herein, which are attributable to Habco and the Estate of Phil Hodge, were done intentionally, fraudulently, maliciously, and/or recklessly.

102.     As a direct and proximate cause of these actions, Mr. Yarger was damaged and is entitled to punitive damages.

WHEREFORE, Mr. Yarger respectfully requests that this Court provide the following relief:

a. That Mr. Yarger be awarded compensatory, incidental, and consequential damages, punitive damages, attorneys' fees and costs, and pre- and post-judgment interest, all in an amount to be proven at trial.

b. All other relief at law or in equity that this Court deems just and proper.

Dated: August 7, 2020

By: /s/ Adam R. Duggan
Matthew W. Olinzock (BPR # 037948)
Adam R. Duggan (BPR # 035121)
**Breeding Olinzock Carter Crippen, PC**
800 South Gay Street, Suite 1200
Knoxville, TN 37929
Telephone: (865) 670-8535
Facsimile: (865) 670-8536
Email: matthew@breedinglaw.com
adam@breedinglaw.com

*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on August 7, 2020, a copy of the foregoing was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic receipt. All other parties will be served by regular U.S. mail. Parties may access this filing through the Court's electronic filing system.

Adam R. Duggan