IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF TENNESSEE

| | |
|---|---|
| HABCO STRUCTURAL SPECIALISTS, INC., | )<br>)<br>) |
| Plaintiff and Counter-Claim Defendant, | )<br>) |
| v. | ) Docket No. 1:20-cv-120<br>) |
| HOMESTEAD JOIST REINFORCEMENT LLC, COLBY YARGER, MICHELLE RAY, STEVEN MELANCON, and NATHANIEL HICKS, | )<br>) **JURY TRIAL DEMANDED**<br>)<br>)<br>) |
| Defendants and Counter-Claim Plaintiffs, | )<br>) |
| v. | )<br>) |
| MARJORIE HODGE, Individually and as the Personal Representative of the Estate of Philip Hodge, LISA KUBELICK, and ANTHONY ESSEX | )<br>)<br>)<br>)<br>) |
| Third-Party Defendants. | |

## COLBY YARGER'S FIRST AMENDED
## COUNTERCLAIMS AND THIRD-PARTY COMPLAINT

Colby Yarger ("Mr. Yarger"), pursuant to Rule 15(a)(1)(A) of the Federal Rules of Civil Procedure, for his First Amended Counterclaims against Habco, and Third-Party Complaint against defendants Marjorie Hodge, Individually and as the Personal Representatives of the Estate of Philip Hodge, Lisa Kubelick, and Anthony Essex, states as follows:

**JURISDICTION AND VENUE**

1. This Court has original jurisdiction over Habco's claim arising under the Defend Trade Secrets Act under 28 U.S.C. § 1331.

2. The Court may exercise supplemental jurisdiction over the remaining claims and Mr. Yarger's claims under 28 U.S.C. § 1367.

3. Venue is proper in this Court under 28 U.S.C. § 1391(b).

## FACTS

### The Parties

4. Mr. Yarger is a resident of Rhea County, Tennessee.

5. Marjorie Hodge ("Ms. Hodge") is a resident of Rhea County, Tennessee.

6. Ms. Hodge is the personal representative of the Estate of Philip Hodge, her late husband, an estate being probated in Rhea County, Tennessee.

7. At the time of his death, Mr. Hodge was a resident of Rhea County, Tennessee.

8. Habco is organized, incorporated, and existing under the laws of the State of Tennessee with its principal place of business at 630 Pegasus Drive, Spring City, Tennessee 37381.

9. At all times relevant to this Counterclaim, Ms. Hodge was acting as an agent of Habco.

10. Lisa Kubelick ("Ms. Kubelick") is a resident of Rhea County, Tennessee, who upon information belief, resides at 439 Ballard Str, Dayton, TN 37321.

11. Ms. Kubelick is Ms. Hodge's daughter and Mr. Hodge's stepdaughter.

12. Anthony Essex is a resident of Rhea County, Tennessee, who upon information belief, resides at 439 Ballard Str, Dayton, TN 37321.

13. Mr. Essex is Ms. Kubelick's husband and Ms. Hodge's son-in-law.

### Mr. Yarger Took Over the Day-to-Day Operations of Habco

14. In or around January 2015, Mr. Hodge, the founder and owner of Habco, agreed to sell Habco to Mr. Yarger through a management leveraged buy-out.

15. This agreement (the "Agreement") was never reduced to writing, but it consisted of several provisions, including that:

   a. Mr. Yarger was given control of Habco's operations;

   b. Mr. Hodge would only be involved with Habco on an intermittent, consulting basis—from both an engineering and a business advising perspective;

   c. Mr. Hodge would issue Mr. Yarger an about $10 million promissory note and transfer all of Habco's stock to Mr. Yarger (though slightly less than that, as Mr. Hodge had transferred a negligible amount of stock to other individuals as bonuses);

   d. Mr. Yarger would pay Mr. Hodge for the principal and interest on the promissory note out of Habco's revenues and profits;

   e. Until the parties reduced a final agreement to writing and the issuance of the promissory note and the transfer of the Habco stock to Mr. Yarger, Mr. Yarger was entitled to all profits from Habco other than those profits that Mr. Yarger and Mr. Hodge agreed would be attributable to the to be issued promissory note during their intermittent discussions regarding the revenue and profits of Habco and their tax burdens ; and

   f. Until the parties reduced a final agreement to writing and the issuance of the promissory note and the transfer of the Habco stock to Mr. Yarger, Mr. Yarger would nonetheless be treated as the owner of Habco and could run Habco as he saw fit, so long as Mr. Yarger and Mr. Hodge agreed on the amount of money to be attributed to the purchase price and with the agreement that if Mr. Yarger left Habco for any reasons before issuance of a promissory note and the transfer of the Habco

-3-
Case 1:20-cv-00120-CEA-SKL   Document 53   Filed 09/11/20   Page 3 of 16   PageID #: 563

stock, that Mr. Yarger would be entitled to a full refund of all amounts he had contributed toward the payment of the to be issued promissory note.

16. The Agreement was between Mr. Yarger and Mr. Hodge, who, upon information and belief, was the nearly sole stockholder of Habco.

17. Mr. Yarger and Mr. Hodge performed under the Agreement without ever reducing a final agreement to writing, issuing a promissory note, or transferring any Habco stock to Mr. Yarger.

18. Were it not for the Agreement and the promises by Mr. Hodge to Mr. Yarger to the same end, Mr. Yarger would not have continued to work for Habco, increase its assets, revenue and profits, and otherwise further its goodwill, to his own detriment, by among other things, shutting down his growing heating and air-conditioning business so that he could focus all of his efforts on growing Habco.

**Mr. Yarger Conferred a Benefit on Mr. and Ms. Hodge and Habco**

19. Per the terms of the Agreement, from 2015 until shortly after Mr. Hodge's death in 2019, Mr. Yarger ran Habco.

20. Per the terms of the Agreement, Mr. Yarger was in charge of hiring and firing, other employment decisions, bidding on jobs, customer relations, human resources, selecting legal counsel, selecting outside accountants, employee remuneration, and any other decision that affected the day-to-day operations of Habco.

21. As a result of Mr. Yarger's business savvy, Habco's annual revenue and profits increased substantially under Mr. Yarger's leadership, with the annual revenue climbing to over $7 million.

22. Mr. Yarger also added other assets to Habco, including additional trucks and other equipment.

23. For example, when Mr. Yarger took over day-to-day operations in 2015 Habco had only two trucks, two trailers, one forklift, and various welders and other miscellaneous tools, all of which was worth approximately $150,000 to $175,000 at most.

24. When Mr. Yarger separated from Habco in 2020, he left Habco with five diesel trucks, two enclosed and fully outfitted trailers, six open trailers, one enclosed trailer, a newer forklift, and many more welders and other miscellaneous tools, all of which was worth approximately $500,000.

25. Consistent with this increase in revenue, profit and assets, Mr. Yarger also expanded Habco's customer base, adding many new customers, which was in addition to the strengthening of previous customers' relationships with Habco.

26. Consistent with the Agreement, Mr. Yarger and Mr. Hodge agreed on an ongoing basis as to the amount of Habco profits to be remitted to Mr. Hodge and attributed to payment of the to be issued promissory note, with the remaining profits being the property of Mr. Yarger.

27. Mr. Yarger paid Mr. Hodge about $881,800 in 2015; $235,000 in 2016; $562,392.72 in 2017; $187,146.17 in 2018; and about $700,000 in 2019 out of Habco's revenues and profits.

28. These payments to Mr. Hodge consisted of both direct payments to Mr. and Ms. Hodge and other expenses of Mr. and Ms. Hodge that were paid by Habco.

29. For example, in 2017, Mr. and Ms. Hodge bought a nearly half-million-dollar motorhome, which was paid for by Habco.

30. This motorhome expense was, at the agreement of Mr. Yarger and Mr. Hodge, attributed to payment of the to be issued promissory note.

31. In sum, Mr. Yarger paid Mr. and Ms. Hodge approximately $2.5 million out of Habco's revenues and profits towards payment of the to be issued promissory note, which Mr. Yarger was otherwise entitled to receive.

32. Mr. Yarger was entitled to all profits of Habco, other than what Mr. Yarger and Mr. Hodge agreed to attribute to the to be issued promissory note, as reflected in the Agreement and the numerous statements by Mr. Hodge to this same end.

**Ms. Hodge Renounced the Agreement and Unilaterally Prohibited Mr. Yarger from Running Habco in Breach of the Agreement**

33. On August 23, 2019, Mr. Hodge died unexpectedly.

34. Mr. Yarger learned of his death through Ms. Hodge on or around the same day.

35. Mr. Yarger attempted to continue to run Habco exactly as he had run Habco before Mr. Hodge's death.

36. However, Ms. Hodge refused to effectively communicate with Mr. Yarger, attempted to sabotage Mr. Yarger's operation of Habco, and intentionally and successfully precluded Mr. Yarger from running Habco.

37. Upon information and belief, in or around September 2019, Ms. Hodge and Ms. Kubelick, acting on their own behalf and without authorization of Habco or Mr. Yarger, attempted to have certain Habco bank accounts frozen.

38. Ms. Hodge without Mr. Yarger's knowledge or permission fired Habco's corporate lawyer, Eric Butler, and accountant, Edgar Gee.

39. Mr. Yarger only learned of this information after receiving phone calls from Mr. Butler and Mr. Gee stating that they had been fired.

40. At the December 6, 2019, Habco board meeting, one of the few instances during this time period in which Ms. Hodge communicated with Mr. Yarger, Ms. Hodge unilaterally appropriated the title and role of Chief Executive Officer of Habco, and all of its attendant rights and responsibilities.

41. At this meeting, Ms. Hodge also informed Mr. Yarger that Mr. Yarger never had an enforceable agreement with Mr. Hodge for the purchase of Habco, that she was the sole owner of Habco and enjoyed sole control over its operations, that Mr. Yarger did not have any say in Habco's operations, and otherwise disavowed the existence of the Agreement.

42. At the meeting, she finally informed Mr. Yarger of the actions she had taken to fire and replace Habco's attorney and accountant.

43. At the meeting, Ms. Hodge gave orders to Mr. Yarger as to other aspects of the day-to-day operation of Habco, including employee remuneration and bonuses, the hiring of additional engineers, and the overall business model of Habco.

44. At this meeting, Ms. Hodge also stated that as sole owner of Habco, it was her intention to sell Habco on the public market.

45. Ms. Hodge's actions left no choice for Mr. Yarger but to resign from Habco.

46. Until Mr. Yarger's forced resignation following Ms. Hodge's actions, Mr. Yarger continued to try and run Habco just as he had run it before Mr. Hodge's death.

47. Ms. Hodge became the personal representative and sole beneficiary of the Estate of Philip Hodge.

48. Ms. Hodge's unjust actions following Mr. Hodge's death occurred while she was the personal representative and sole beneficiary of the Estate of Philip Hodge.

49. Thus, Ms. Hodge, in addition to being individually liable for her own actions, is liable for her actions as the Personal Representative of the Estate of Philip Hodge.

50. Furthermore, following Mr. Hodge's death, Ms. Hodge purported to act on behalf of Habco as its majority shareholder and majority vote holder on Habco's board.

51. As such, Ms. Hodge's unjust actions following Mr. Hodge's death occurred while she was the agent of Habco.

52. Thus, Ms. Hodge's actions are attributable to Habco under the theory of vicarious liability.

**Ms. Hodge, Ms. Kubelick and Mr. Essex and Habco Converted Mr. Yarger's Property**

53. Mr. Yarger owned certain personal property he stored on his property located at 24595 Rhea County Highway, Spring City, Tennessee 37381.

54. This is the same property which is the subject of Habco's wrongful eviction claim against Mr. Yarger.

55. On or about March 28, 2020, Ms. Hodge, Ms. Kubelick, and Mr. Essex, acting on their own behalf and as agents of Habco, entered Mr. Yarger's property located at 24595 Rhea County Highway, Spring City, Tennessee 37381, and without authorization took and retained Mr. Yarger's personal property stored at this address, including a heating and air system, unit pads for the heating and air systems, plastic storage totes, rollup overhead drum door, two metal till hoppers, and a light.

56. When Mr. Yarger exercised his right to terminate the month-to-month lease of the subject real property, the previously mentioned items of personal property belonged to Mr. Yarger.

57. Ms. Hodge, Ms. Kubelick, and Mr. Essex, had no rights under the month-to-month lease, or otherwise, to take these items.

## COUNT I

## UNJUST ENRICHMENT

### (Ms. Hodge, Individually and as the Personal Representative of the Estate of Philip Hodge, and Habco)

58. The foregoing paragraphs are fully incorporated by reference herein.

59. Mr. Yarger conferred a benefit upon Mr. Hodge and, by Mr. Yarger's direct payments and by her inheritance of Mr. Hodge's assets and as the personal representative of his estate, Ms. Hodge, by paying them nearly $2.5 million toward the purchase price of Habco out of profits that Mr. Yarger was otherwise entitled to receive, increasing the assets, revenue and profits of Habco, and otherwise furthering the goodwill of Habco.

60. Mr. Hodge and, by her inheritance of Mr. Hodge's assets and as the personal representative of his estate, Ms. Hodge, appreciated those benefits, as they now control all of the monies paid by Mr. Yarger, the increased revenue and profits, and the goodwill of Habco.

61. Furthermore, Mr. Yarger conferred a benefit upon Habco by increasing its assets, revenue and profits and otherwise furthering its goodwill.

62. Habco appreciated those benefits, as it now retains the increased assets, revenue and profits (to the extent not already remitted to Mr. Hodge and/or Ms. Hodge) and goodwill.

63. It would be inequitable for Mr. Hodge, Ms. Hodge, and Habco to retain these benefits given Ms. Hodge's actions, which are attributable to Mr. Hodge's estate and Habco, in breaching the Agreement between Mr. Hodge and Mr. Yarger and otherwise constructively discharging Mr. Yarger.

64. As a direct and proximate result of the inequitable retention of these benefits, Mr. Hodge, Ms. Hodge, and Habco have been unjustly enriched to the detriment of Mr. Yarger, for which Mr. Yarger is entitled to an award of damages.

65. As a result of Ms. Hodge's malicious, intentional, fraudulent, and reckless conduct, Individually and as the Personal Representative of the Estate of Philip Hodge and as an agent of Habco, Mr. Yarger is entitled to punitive damages.

## COUNT II

## PROMISSORY ESTOPPEL

**(Ms. Hodge, Individually and as the Personal Representative
of the Estate of Philip Hodge)**

66. The foregoing paragraphs are fully incorporated by reference herein.

67. Mr. Hodge, on his own behalf and as an agent of Habco, made promises to Mr. Yarger consistent with the terms of the Agreement, including promising Mr. Yarger that Mr. Yarger would be given day-to-day operations of Habco and keep all profits of Habco and only pay Mr. Hodge an amount of money out of the profits as agreed during Mr. Yarger's and Mr. Hodge's periodic reviews.

68. This promise was unambiguous and definite; in fact, Mr. Yarger and Mr. Hodge acted in accordance with this promise for four years, without issue.

69. Mr. Yarger reasonably relied on this promise to his substantial economic detriment, as Mr. Yarger would not have agreed to the amounts to be attributed to the to be issued promissory note out of the Habco profits to which Mr. Yarger was entitled, continued to work for Habco, increase its revenue and profits, otherwise furthered its goodwill and ceased operating his heating and air-conditioning business had this promise not been made.

70. This substantial economic detriment was foreseeable to Mr. Hodge when he made the promise to Mr. Yarger.

71. Ms. Hodge, Individually and as the Personal Representative of the Estate of Philip Hodge, broke this promise by breaching this promise and otherwise constructively discharging Mr. Yarger.

72. As a direct and proximate result of these actions, Mr. Yarger has been harmed.

73. As a result of Ms. Hodge's malicious, intentional, fraudulent, and reckless conduct, Individually and as the Personal Representative of the Estate of Philip Hodge, Mr. Yarger is entitled to punitive damages.

## COUNT III

## IN THE ALTERNATIVE – BREACH OF CONTRACT

### (Ms. Hodge, Individually and as the Personal Representative of the Estate of Philip Hodge)

74. The foregoing paragraphs are fully incorporated by reference herein.

75. Strictly in the alternative to Mr. Yarger's equitable claims, there was a valid and enforceable agreement between Mr. Yarger and Mr. Hodge—the Agreement.

76. Upon information and belief, Ms. Hodge became responsible for executing the Agreement as Mr. Hodge's personal representative and was the sole inheritor of this contract.

77. Mr. Hodge, through Ms. Hodge's actions, breached the Agreement by, among other things:

   a. Renouncing the existence of the Agreement;

   b. Prohibiting Mr. Yarger from running the day-to-day operations of Habco;

   c. Refusing to communicate with Mr. Yarger;

   d. Attempting to freeze Habco's bank accounts;

   e. Firing Habco's corporate accountant and lawyer;

f.  Unilaterally appropriating the title, and concomitant power, of Chief Executive Officer of Habco;

g.  Refusing to allow Mr. Yarger to continue paying for his acquisition of Habco; and

h.  Retaining, Mr. Yarger's monies that were paid to Mr. Hodge for purchase of Habco stock.

78. Additionally, under this Agreement, Ms. Hodge, Individually and as the Personal Representative of the Estate of Philip Hodge, had a duty to exercise good faith and fair dealing in fulfilling the contractual obligations.

79. Ms. Hodge, Individually and as the Personal Representative of the Estate of Philip Hodge, breached the duty of good faith and fair dealing by, among things:

a.  Renouncing the existence of the Agreement;

b.  Prohibiting Mr. Yarger from running the day-to-day operations of Habco;

c.  Refusing to communicate with Mr. Yarger;

d.  Attempting to freeze Habco's bank accounts;

e.  Firing Habco's corporate accountant and lawyer;

f.  Unilaterally appropriating the title, and concomitant power, of Chief Executive Officer of Habco;

g.  Refusing to allow Mr. Yarger to continue paying for his acquisition of Habco; and

h.  Retaining Mr. Yarger's monies that were paid to Mr. Hodge for purchase of Habco stock.

80. As a direct and proximately result of these actions, Mr. Yarger has suffered damages.

81. As a result of Ms. Hodge's, malicious, intentional, fraudulent, and reckless conduct, Individually and as the Personal Representative of the Estate of Philip Hodge, Mr. Yarger is entitled to punitive damages.

## COUNT IV

## IN THE ALTERNATIVE – INTERFERENCE WITH CONTRACT

**(Ms. Hodge, Individually and as the Personal Representative
of the Estate of Philip Hodge, and Habco)**

82. The foregoing paragraphs are fully incorporated by reference herein.

83. Strictly in the alternative to Mr. Yarger's equitable claims and to Mr. Yarger's breach of contract claim against Ms. Hodge, Individually and as the Personal Representative of the Estate of Philip Hodge, there was a valid and enforceable agreement between Mr. Yarger and Mr. Hodge, and to the extent Ms. Hodge was not a party to the Agreement, she aware of the Agreement.

84. Habco, vicariously through its agents, Mr. and Ms. Hodge, was aware of the Agreement.

85. Ms. Hodge, and vicariously Habco, intended to induce a breach of the Agreement by:

    a. Renouncing the existence of the Agreement;

    b. Prohibiting Mr. Yarger from running the day-to-day operations of Habco;

    c. Refusing to communicate with Mr. Yarger;

    d. Attempting to freeze Habco's bank accounts;

    e. Firing Habco's corporate accountant and lawyer;

    f. Unilaterally appropriating the title, and concomitant power, of Chief Executive Officer of Habco;

g. Refusing to allow Mr. Yarger to continue paying for his acquisition of Habco; and

h. Retaining, Mr. Yarger's monies that were paid to Mr. Hodge for purchase of Habco stock.

86. Ms. Hodge, and vicariously Habco, acted with malice.

87. As a direct and proximate result of these actions, Mr. Yarger has suffered damages.

88. Pursuant to Tennessee Code Annotated Section 47-50-109, Ms. Hodge's inducement to and procurement of the breach of the Agreement entitles Mr. Yarger to treble the amount of his damages.

89. As a result of Habco's and Ms. Hodge's, Individually, malicious, intentional, fraudulent, and reckless conduct, Mr. Yarger is entitled to punitive damages.

## COUNT V

## CONVERSION

**(Habco, Ms. Hodge, Individually, Ms. Kubelick, and Mr. Essex)**

90. The foregoing paragraphs are fully incorporated by reference herein.

91. Mr. Yarger is the owner of certain personal property, including a heating and air system, unit pads for the heating and air systems, plastic storage totes, rollup overhead drum door, two metal till hoppers, and a light.

92. Ms. Hodge, Ms. Kubelick, and Mr. Essex, acting on their own behalf and as agents of Habco, intentionally and knowingly misappropriated this personal property by improper means by taking it and retaining it without authorization.

93. Ms. Hodge, Ms. Kubelick, Mr. Essex and Habco have used said property for their own benefit.

94. Ms. Hodge, Ms. Kubelick, Mr. Essex and Habco have intentionally exercised dominion over this property by refusing to return the property to Mr. Yarger.

95. The foregoing actions have defied Mr. Yarger's, the true owner, rights.

96. As a direct and proximate result of the conversion, Mr. Yarger has suffered damages.

97. As a result of Habco's, Ms. Hodge's, Individually, Ms. Kubelick's, and Mr. Essex's malicious, intentional, fraudulent, and reckless conduct, Mr. Yarger is entitled to punitive damages.

WHEREFORE, Mr. Yarger respectfully requests that this Court provide the following relief:

a. That Mr. Yarger be awarded compensatory, incidental, and consequential damages, punitive damages, attorneys' fees and costs, and pre- and post-judgment interest, all in an amount to be proven at trial.

b. All other relief at law or in equity that this Court deems just and proper.

Dated: September 11, 2020

By: /s/ Adam R. Duggan
Matthew W. Olinzock (BPR # 037948)
Adam R. Duggan (BPR # 035121)
**Breeding Olinzock Carter Crippen, PC**
800 South Gay Street, Suite 1200
Knoxville, TN 37929
Telephone: (865) 670-8535
Facsimile: (865) 670-8536
Email: matthew@breedinglaw.com
adam@breedinglaw.com

*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on September 11, 2020, a copy of the foregoing was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic receipt. All other parties will be served by regular U.S. mail. Parties may access this filing through the Court's electronic filing system.

Adam R. Duggan